JAMES B. JOHNSON, Appellant, v. UNITED RAILWAYS COMPANY et al.

Division One, May 31, 1912.

1. **DEMURRER TO PETITION: Sustained on Former Appeal: Same Cause Stated in New Suit: Accounting Alone in Last: Injunction, Rescission and Accounting in Former.** Where the court sustained a demurrer to the petition in the former action, which sought an injunction, rescission of a contract and an accounting, on the ground that it did not state a cause of action, it will not be held that a demurrer to a petition in

a subsequent suit which seeks only an accounting was sustained for a different reason; for the rule is that where a petition states, in the same or different counts, several grounds of recovery, a general demurrer thereto will not be sustained if a cause of action is stated on any ground. So that if in the petition filed in the former suit all the facts of the transaction were stated upon which an injunction, a rescission of a contract and an accounting were sought, and a demurrer thereto was sustained and that demurrer was soundly ruled, so will a demurrer to the petition in the present suit, in which the same facts are stated and only an accounting is sought, be sustained.

2. ————: ————: ————: **Res Adjudicata.** Where a demurrer to the petition in the former suit was sustained on the ground that it failed to state a cause of action and that judgment was upheld on appeal, that adjudication, in a subsequent suit wherein the petition states substantially the same facts and transactions that were stated in the former opinion, is *res adjudicata*.

3. ————: ————: ————: ————: **Hearing on the Merits.** A judgment on a demurrer to a petition holding that it does not state a cause of action is *res adjudicata* on the merits in a subsequent suit wherein the petition states substantially the same facts and transactions that were stated in the petition held insufficient, and praying the same relief. Where the demurrer strikes at the merits of a cause, its very life and substance (and not at some collateral matter arising during the progress of the trial, or to some matter in abatement, such as non-joinder or misjoinder of parties, multifariousness, improper joinder of actions, etc.), the judgment sustaining it is a final one and a complete bar to a further adjudication.

4. **LIMITATIONS: Five Years: Fraud.** A bill in equity brought by a stockholder of a corporation, for the benefit of the corporation, for an accounting, and for the recovery of alleged profits made by the defendants, growing out of an alleged fraud perpetrated by them upon the corporation, is barred in five years after the perpetration of the fraud, unless the petition contains averments of substance that the facts constituting the fraud were not discovered or known by plaintiff within the five years.

5. ————: ————: ————: **No Allegation of Want of Knowledge: Presumption.** In the absence of any allegation from the bill of no knowledge of the fraud at the time it was perpetrated, it will be presumed, in a suit for relief against the fraud brought more than five years after its perpetration, that plaintiff (or the stockholder from whom he bought the stock of the corporations committing the fraud) had knowledge of it from the date of the fraudulent transactions.

6. ————: ————: ————: **Knowledge Presumed: Concealment: Facts Shown by Records and Newspaper Notoriety.** An

equitable suit for relief against fraud is barred in five years whether or not plaintiff and those from whom he bought the stock · of the defrauding. corporation knew of the fraudulent transaction if the facts showing the fraud were open and appeared upon the records of the corporation and the recorded mortgages executed in pursuance to the fraudulent acts. To prevent the statute from running there must be concealment, and mere silence is not concealment; there must be some trick or contrivance intended to exclude suspicion and prevent inquiry; and where the transactions alleged to have been fraudulent were of a public character, affecting the entire street railway system of a great city, and were the subject of general conversation and newspaper comment and notoriety, no concealment can be said to exist, for the means of knowing is held to be knowledge.

7. ———: ———: ———: ———: **Trust Funds: Fiduciary Relation.** But this rule as to concealment and knowledge does not apply to parties sustaining a fiduciary relation to plaintiff in a suit to compel them to account for trust funds fraudulently converted to their own use, but such relation exists only where there is an express trust, created by deed or will or law. The five-year statute is a bar to a suit to recover moneys converted to his own use by a constructive trustee of an implied trust, unless there has been such concealment of the fraud as to defeat discovery.

8. ———: ———: **Extended by Nonsuit Statute.** A judgment upon a demurrer to the merits of the cause is not a nonsuit; and hence the provisions of Sec. 1900, R. S. 1909, providing that the plaintiff may have one year additional time after nonsuit suffered in which to renew his suit, do not extend the five-year Statute of Limitations by one year, so as to permit plaintiff, after a demurrer to his petition in a suit brought within the five years was sustained, to bring the suit over again within one year after said judgment but more than five years after the fraudulent transactions were perpetrated.

Appeal from St. Louis City Circuit Court.—*Hon. Hugo Muench,* Judge.

AFFIRMED.

*John A. Gilliam* for appellant.

(1) The court erred in sustaining demurrer to petition thereby holding that this was not the same as the previous case. Johnson v. Railroad, 227 Mo.

423. (2) The court erred in sustaining demurrer to
petition thereby holding that the petition did not state
facts sufficient to constitute a cause of action. Bent
v. Priest, 86 Mo. 475; Ward v. Davidson, 89 Mo. 458;
Story on Agency, sec. 207; Chinn v. Chinn, 22 La.
Ann. 599; Bosworth v. Allen, 168 N. Y. 157; 1 Mora-
wetz Priv. Corp. (2 Ed.), secs. 243-245; Field on Corp.
174; 1 Perry on Trusts (3 Ed.), sec. 429; Wardell v.
Railroad, 103 U. S. 651; Jones v. Elec. Co., 144 Fed.
765; Cook on Corp. (5 Ed.), sec. 649; 10 Cyc. 799;
Jackson v. Ludeling, 21 Wall. 616; Menier v. Tel.
Works, 9 Ch. App. Cas. 350; 2 Clark and Marshall on
Corp., secs. 539 to 545, pp. 1667 to 1692; Goodwin v.
Canal Co., 18 Oh. St. 169; Ervin v. Railroad, 20 Fed.
577, 27 Fed. 625; 2 Story's Eq. Jur., secs. 1261-1262;
Sage v. Culver, 147 N. Y. 241; Gamble v. Q. C. W. Co.,
123 N. Y. 91; Trust Co. v. Railroad, 150 N. Y. 410;
Hinds v. Gas Co., 88 N. Y. Supp. 954; Meeker v. Iron
Co., 17 Fed. 48; Sidell v. Railroad, 24 C. C. A. 216; Barr
v. Railroad, 96 N. Y. 444; Wright v. Oroville Co., 40
Cal. 20; Ponder v. Railroad, 72 Hun, 380, 25 N. Y.
Supp. 560; Gregory v. Patchett, 33 Beavan, 595; Meyer
v. Railroad, 7 N. Y. 245; Woodroof v. Howes, 88 Cal.
184; Kochler v. Iron Co., 67 U. S. 715; Freeman v.
Stine, 15 Phila. 37; Bank v. Claxton, 80 S. W. 607;
Smith v. Tyler, 57 Mo. App. 668; Euneau v. Rieger,
105 Mo. 659; Angle v. Railroad, 151 U. S. 1; Pomeroy
Eq. Jur. (3 Ed.), secs. 155, 1053. (3) The court erred
in sustaining demurrer to petition thereby holding
that the cause of action therein stated was *res adjudi-
cata*. Railroad v. Hoyt, 177 Ill. 617; Railroad v. Mc-
Cerrin, 75 Miss. 687; O'Hara v. Parker, 27 Ore. 156;
Spicer v. United States, 5 Ct. Cl. 34; Robinson v.
Howard, 5 Cal. 428; Campbell v. Hunt, 104 Ind. 210;
Bennett v. Bank, 61 Mo. App. 300; Wells v. Moore,
49 Mo. 229; 1 Freeman on Judg. (4th Ed.), secs. 260-
267; Gordon v. Burriss, 125 Mo. 39; Ferry Co. v. Rail-
road, 142 U. S. 410; Packet Co. v. Sickles, 24 How.

333; Gould v. Railroad, 91 U. S. 526; Boyd v. Alabama, 94 U. S. 645; Russell v. Place, 94 U. S. 606; Morrell v. Morgan, 65 Cal. 575; Gilman v. Rives, 10 Pet. 298; Richardson v. Barton, 24 How. 188; City v. West, 7 Wall. 106; Mfg. Co. v. Tag Co., 121 Fed. 313; Papworth v. City, 111 Ga. 54; Genet v. Canal Co., 163 N. Y. 178; Wiethaupt v. St. Louis, 158 Mo. 655; Detrick v. Sharrar, 95 Pa. St. 525; Loudenback v. Collins, 4 Ohio St. 251; Robb v. Coal Co., 216 Pa. St. 423; Packet Co. v. Sickels, 5 Wall. 580; Wells on Res Adjudicata, secs. 13-440; Hughes v. U. S., 71 U. S. 237; Keater v. Hock, 16 Iowa, 23; Lockett v. Lindsay, 1 Idaho, 326; Wharton's Evid. (3 Ed.), sec. 782; Thomas v. Bland, 91 Ky. 1; Swanson v. Railroad, 73 Minn. 103; Duke v. Tel. Co., 71 S. C. 95; State v. McEldowney, 54 W. Va. 701; Glass v. Min. Co., 34 Mont. 88; Wilcher v. Robertson, 78 Va. 718; Langmeir v. Landes, 113 Ill. App. 137; State v. Roth, 47 Ark. 226; Gallup v. Lichter, 4 Colo. 298; Terry v. Hammonds, 47 Cal. 32; Birch v. Funk, 2 Met. (Ky.) 547; Kingston's Case, 2 Smith Leading Cases, Hare & Wallace's Notes, 791; 1 Greenleaf on Ev., secs. 528-530 (Redfield's 12 Ed.); Wibur v. Gilmore, 38 Mass. 250; Rodman v. Railroad, 59 Mich. 398; Gordon v. Burris, 153 Mo. 227. (4) The court erred in sustaining the demurrer to the petition thereby holding that the Statute of Limitations barred this suit. Chouteau v. Allen, 70 Mo. 335; Sec. 1900, R. S. 1909; Chouteau v. Rowse, 90 Mo. 191; Thurman v. James, 48 Mo. 236; Coit v. Bland, 12 App. Pr. 462, 33 Barb. 357; Harrison v. Wood, 2 Duer, 50; Jansen v. Acker, 23 Wend. 480; Rudd v. Davis, 3 Hill, 287; Bishop v. Morgan, 1 Code Rep. (N. S.) 340; Long v. McGowan, 16 Colo. App. 540; Hilton v. Admr., 110 Ky. 522; Chitty on Pleading (14 Am. Ed.), 196, 197; Koehler v. Iron Co., 67 U. S. 715; Elliott v. Mach. Co., 139 S. W. 356. (5) The court erred in sustaining demurrer to petition, because essential additional allegations have been supplied curing defects in previous petition.

Warner v. Blakeman, 4 Keyes (N. Y.) 487; Murtha v.
Corley, 90 N. Y. 372; Bent v. Priest, 86 Mo. 475; Gibson v. White, 3 Munf. (Va.) 94; Brown v. Admx., 61
Ky. 316; Ogden v. Wood, 51 How. Prac. 375; Com. Co.
v.. Railroad, 126 Mo. 344; Jones v. Elec. Co., 144 Fed.
765; Woodroof v. Howes, 88 Cal. 184; Banks v. Judah,
8 Conn. 145; Meeker v. Winthrop, 17 Fed. 48; March
v. Railroad, 43 N. H. 515; Green v. Hedenberg, 159 Ill.
493; Young v. Drake, 8 Hun (N. Y.) 64; Ramsay v.
Gould, 57 Barb. 398; Carson v. Gaslight Co., 80 Iowa,
638; Dupont v. Railroad, 18 Fed. 467; Munson v. Railroad, 103 N. Y. 58; Hill v. Mining Co., 119 Mo. 22;
Pollitz v. Gould, 94 N. E. 1088; Morawetz on Priv.
Corp. (2 Ed.), sec. 267; Hughes v. U. S., 71 U. S. 237;
Witte v. Storm, 139 S. W. 384; Sweeney v. Ref. Co.,
30 W. Va. 443; Railroad v. Collins, 40 Ga. 582;
Elkins v. Railroad, 36 N. J. Eq. 5; Pender v. Lushington, L. R. 6 Ch. Div. 70; Perry on Trusts (6 Ed.), secs.
129, 217, 196-197, 209, 427, 428; Railroad v. Page, 35
Ark. 304; Duncomb v. Railroad, 84 N. Y. 190; Cavagnaro v. Don, 63 Cal. 231.

*Boyle & Priest, Schnurmacher & Rassieur,
George T. Priest, T. E. Francis, George L. Edwards*
and *Walter G. Neun* for respondents.

(1) The petition does not state a cause of action,
because it does not negative the recitals in the tripartite agreement, showing that Transit Co. was insolvent and unable to continue operations as a public service company, and that there was an urgent necessity
for Transit Co. to sell its securities, as was done under
and by virtue of said agreement, nor does the petition
show that such sale was made on less advantageous
terms than could have been secured elsewhere. Johnson v. Railroad, 227 Mo. 423; Tanner v. Railroad, 180
Mo. 1. (2) Plaintiff cannot maintain this action,

because the petition shows he did not acquire his stock until after the tripartite agreement had been fully executed. Ins. Co. v. Barber, 60 L. R. A. 933; Hawes v. Water Co., 104 U. S. 450; Dinpfell v. Railroad, U. S. 209; Dannmeyer v. Coleman, 11 Fed. 97; Wilson .v. Railroad, 120 Mo. 58. (3) The petition shows on its face that a demurrer to a petition, praying for a rescission, an injunction and an accounting, predicated on the same alleged wrongs herein counted on, was sustained, and that the judgment rendered thereon was final. That judgment was an adjudication of the case on the merits (Johnson v. Railroad, 227 Mo. 423), and hence it is a bar to the prosecution of the present case. Ins. Co. v. Smith, 117 Mo. 296; Coleman v. Dalton, 71 Mo. App. 22; Pond v. Huling, 125 Mo. App. 482; Lyon v. Mfg. Co., 125 U. S. 698; Railroad v. Railroad, 27 Fed. 283; Spencer v. Watkins, 169 Fed. 379; Turner v. Cates, 90 Ga. 731; Bank v. Walden, 1 La. Ann. 46. (4) (a) The alleged cause of action counted on is barred by the five year Statute of Limitations, in that said alleged cause of action accrued in October, 1904, while this suit was not commenced until September 16, 1910. The cause of action attempted to be asserted is predicated on an alleged fraud, and hence the five year statute is applicable. Sec. 1889, R. S. 1909; Bent v. Priest, 86 Mo. 487; Lardis v. Saxon, 105 Mo. 485; Hudson v. Cahoon, 193 Mo. 547. (b) There is no showing that would tend to extend plaintiff's time, under the fifth subdivision of sec. 1889, Revised Statutes 1909, beyond the five year period after the cause of action accrued, because there is no averment that he did not have knowledge of the facts at the date of the accrual of the alleged cause of action. County v. Bragg, 135 Mo. 291; Callan v. Callan, 175 Mo. 346; State v. Yates, 231 Mo. 276; Scott v. Boswell, 136 Mo. App. 601; State v. Musick, 145 Mo. App. 47. (5) The point made in appellant's brief, that the Statute of Limitations does not apply to this

action, because it is said to be an action for trust funds fraudulently converted, is not well taken, inasmuch as that principle is applicable only to technical express trusts created by will or deed, and does not apply to resulting or implied trusts. Landis v. Saxton, 105 Mo. 486; Hudson v. Cahoon, 193 Mo. 562; Bank v. Thayer, 184 Mo. 94; Bent v. Priest, 86 Mo. 475, 488. (6) The point made in appellant's brief, that the one year Statute of Limitations (sec. 1900, R. S. 1909), granting additional time in case of nonsuit, is applicable to this case, is not well taken, because: (a) The determination of the previous case on demurrer to the petition was not a judgment of nonsuit, but was a judgment on the merits. Cases cited under pt. 2. (b) The former action was for an injunction, a rescission and an accounting, while the present action is for an accounting only; in the former case plaintiff repudiated the tripartite agreement and sought to rescind it; in this case he affirms it and seeks to recover the alleged fruits garnered from it. The one year statute is not applicable unless the form of action asserted in the new suit is precisely the same as that asserted in the suit in which nonsuit was suffered. Meddis v. Wilson, 175 Mo. 134; Whalen v. Gordon, 95 Fed. 305; In re Kemper, 142 Fed. 210; Bricken v. Cross, 163 Mo. 449.

WOODSON, J.—This is a bill in equity instituted by the plaintiff against the defendants in the circuit court of the city of St. Louis, as a stockholder in the Transit Company, seeking an accounting for certain profits alleged to have been made by the defendants growing out of a tripartite agreement, made and entered into by and between the St. Louis Transit Company, a street railway corporation organized under the laws of the State of Missouri, party of the first part, and the United Railway Company, a street railway corporation organized under the laws of Mis-

souri, party of the second part, and Brown Brothers & Company, a copartnership of New York City.

The petition is based upon the same cause of action, and the petition is substantially the same as that involved in the case of Johnson v. United Railways Co., 227 Mo. 423. The principal and practically the only difference existing between the petition in that case and the one filed in this case is this: In that case the suit was for a rescission of the contract before mentioned, injunctive relief, and an accounting for the profits growing out of said contract, while the present suit is for an accounting only.

(The word profits as used in this case means the amount of money or property the defendants received from the Transit Company under the tripartite contract, over and above the price they paid for the same, and not the income and profits of the company derived from the traveling public.)

Reference is here made to that case from a statement of the facts.

At the first trial, the circuit court, on demurrer to the third amended petition, held that it did not state facts sufficient to constitute a cause of action against the defendants, and in addition, the plaintiff having been compelled under section 1826, Revised Statutes 1909, to stand on his petition, treble damages were assessed against him.

From that judgment the plaintiff appealed to this court, which was in all things affirmed in the case of Johnson v. United Railways Co., supra.

Being prohibited by said section 1826 from filing another amended petition in that cause, the plaintiff, upon the affirmance of the judgment of the circuit court, by this court, brought this suit in the same court.

To the first amended petition, the defendants filed a demurrer, the substance of which is that:

(1)   Because it does not state facts sufficient to constitute a cause of action against said defendant.

(2)   Because the petition shows upon its face that the matters therein set out are *res adjudicata.*

(3)   Because the petition shows on its face that the cause therein alleged is barred by the Statute of Limitations.

(4)   Because it appears from the amended petition that plaintiff's cause of action accrued more than five years prior to the institution of this suit, and that this suit was not filed within one.year after plaintiff suffered a nonsuit in any suit based on the same cause of action; and the amended petition herein shows that the former suit therein referred to, was based upon a different cause of action from that now sued on.

The demurrer was sustained, and the plaintiff declining to plea further, judgment was rendered accordingly against him, from which he duly appealed to this court.

I.   The first reason assigned by counsel for the appellant for a reversal of the judgment, is stated in this language:

"The court erred in sustaining demurrer to petition thereby holding that this was not the same as the previous cause."

I am unable to see why it must follow, as contended for by counsel, that because the court sustained the demurrer to the petition it must also have held that "this was not the same as the previous cause."

No one can read the petitions filed in the two cases, and come to any other rational conclusion, but that the two causes of action stated are one and the same, the only difference being that the present suit is for an accounting only, while the former was for an injunction, rescission and an accounting; the latter including the former and more.

Independent of this, counsel for both the appellant and the respondents concede and insist throughout the pleadings, evidence, briefs and arguments, that the two causes of actions stated in the two petitions are one and the same, bottomed upon the same facts and stated almost in the same language in each petition.

That being true, there is nothing to be done but to treat them as being one and the same.

That being true, then it logically follows, that if the decision of this court, in the case upon the former appeal, which included the grounds for an accounting, was soundly rendered, then the judgment of the circuit court sustaining the demurrers to the petition in this cause, must also be considered sound and proper. I do not refer to the question of practice regarding the right to join in the same bill a count for a rescission of the contract, and for an accounting for the profits growing out of said contract, for the reason that if the petition in that case had stated a good cause of action against the defendants for the injunction prayed, the rescission sought or the accounting asked, or all three collectively, the demurrer thereto should not have been sustained, for the reason that this court has repeatedly held that where the petition stated in the same or different counts, several grounds for a recovery, it is error for the court to sustain a general demurrer to the petition or to the evidence, when it tends to prove any one or more of said grounds.

In such a case it is the duty of the court, and it will separate and preserve the good grounds for a recovery from the bad, and cast the latter aside as surplusage.

In the petition filed in the former suit, as in the one filed in this one, all the facts that existed in the transaction were stated, and if they had constituted grounds for an injunction, rescission or for an accounting, the demurrer would not have been sustained;

if however, those facts did not constitute grounds for any of the objects sought by the petition, then the demurrer was properly sustained.

The petition in this case, as previously stated, is, for all intents and purposes, the same as was the first, and is predicated upon the same facts, save and except it does not pray for an injunction or ask for a rescission of the contract mentioned, but all the facts which were pleaded in the former suit are again pleaded here; and upon this state of the record we are in effect requested to reconsider the former ruling of this court in that cause—the contention of counsel being, that "the court erred in sustaining demurrer to petition thereby holding that the petition did not state facts sufficient to constitute a cause of action."

In response to this request, we have carefully reconsidered the question, and examined anew the numerous authorities cited by counsel for both parties, but after doing so we are unable to see any valid reason for changing our views of the law so well expressed in that case. We are, therefore, of the opinion that the demurrer was properly sustained to the petition filed in the first suit, and consequently must hold that the trial court properly sustained the demurrer to the petition in this case, because it does not state facts sufficient to constitute a cause of action.

II.   Counsel for respondent insist that the demurrer in this case was properly sustained, for the reason that the petition shows upon its face that the matters set out are *res adjudicata*.

The petition in this case states substantially the same facts and transactions that were stated in the former petition. This is contended for by counsel for appellant, and conceded by counsel for respondents. That being true, then the same cause of action that is stated in this petition was stated and adjudicated

in the former trial, which must operate as a com-plete bar to this suit, without the *objection made thereto by counsel for appellant is well taken, which will be considered in the next paragraph of this opinion.

III.    Counsel for appellant insists that the judgment on the demurrer in the former case is not *res adjudicata* in this one, for the reason "that there is no binding decision until a case is heard upon its merits."

Let us consider for a moment the result, if that statement of the law is a correct enunciation of it. In the former suit we held, among other things, that the petition filed therein did not state facts sufficient to constitute a cause of action against the defendants, and thereupon the plaintiff brought it over again in this suit. We have held in paragraph two of this opinion, that this petition does not state facts sufficient to constitute a cause of action; and since a cause, under our code of procedure, cannot be heard upon its merits, so long as it stands adjudged bad on demurrer, when and where would this litigation end?

Under this state of facts, the merits of appellant's cause can never be heard in this case, consequently if a judgment on a demurrer to the merits is not *res adjudicata,* then he may go back to St. Louis and institute another suit upon the identical cause of action stated in the petitions filed in this and in the former suit, which under our rulings in this and in the former suit would be demurrable also; and if the plaintiff has stated the facts of his case in this suit, of which there can be no doubt, then the third, fourth and fifth suits, or as many more as he might see proper to bring, would have to state the same cause of action as is here stated, and the rulings of this court, if our former decisions herein are to govern in the subsequent suits based upon this same

cause of action, would prevent him from ever getting a hearing of his cause on its merits, for the simple reason that it has no merits, as we have held in this and in the former appeal. Consequently, if counsels contention is sound, then the plaintiff and his heirs, executors, administrators and assigns could bring a new suit under section 1900, Revised Statutes 1909, within a year after each and every demurrer to his petition is sustained, until the end of time, or until Gabriel sounds his trumpet.

Counsel for appellant, in his brief concedes that there is plenty of authority holding that a demurrer to the merits of a case is *res adjudicata*. On page 24 of his brief he uses this language:

"Cases can be found in the multiplicity of decisions in England, Ireland, Scotland, Canada, forty-six States, and United States courts, which have been poorly considered and wrongly decided, which can be twisted and a somewhat plausible argument made that they apply to this case, and make the decision of the demurrer in 227 Mo. 423, a final decision of this case."

From this statement it is seen that counsel concedes that there is the greatest abundance of authority for holding that a judgment upon a demurrer to the merits is *res adjudicata,* but he seeks to escape the effect of those authorities by saying that they were "poorly considered and wrongly decided," and cites scores of cases in support of his position.

I have examined quite a number of those cases and while they hold that a judgment on a demurrer is not a final disposition of the case, and a bar to a new suit upon the same cause of action, but all the cases I examined refer to judgments based upon a demurrer to some matter in abatement, and not to the merits of the cause itself.

In fact, counsel for respondents do not controvert the correctness of the rule of law announced in

the authorities cited by appellant, which apply to judgments based upon demurrers to matters in abatement, and not to the merits of the case; but they insist that where the demurrer strikes at the merits and very life of the case, and the demurrer is sustained, quite a different rule applies wherever the common law prevails, and has not been changed by statute.

We will consider a few of the cases where the question has been fully discussed and which have fully sustained the contention of counsel for respondents.

In considering this question, this court, in the case of Connecticut Mutual Life Insurance Company v. Smith, 117 Mo. 261, l. c. 296, in an exhaustive opinion written by SHERWOOD, J., concludes by saying that "This adjudication occurred in 1882, and though made on a demurrer to the petition, yet, as the demurrer went to the merits, the whole matter in controversy became res adjudicata." [Biglow on Estoppel (5 Ed.), 560.]

So in Coleman v. Dalton, 71 Mo. App. 14, l. c. 23, the court said: "But whether the pleading be called the one or the other (demurrer or return) it is sufficient to say that by the pleadings the merits of the controversy were thereby submitted and the court at once heard and decided the case. A judgment on demurrer may be as final and conclusive between the parties as any other. It is otherwise only when the judgment on demurrer results from a defective pleading or other demurrable matter not relating to the merits of the case . . . But a judgment on demurrer may be a judgment on the merits. If so its effect is as conclusive as though the fact set forth in the complaint were admitted by the parties or established by evidence submitted to the court or jury. No subsequent action can be maintained by the plaintiff if the judgment is against him on the same facts stated in the former complaint. If any court errs in sustaining a demurrer and entering a

judgment for defendant thereon, while the complaint
is sufficient, the judgment nevertheless is *on the merits.*"

In Spencer v. Watkins, 169 Fed. 378, it was decided by the United States Court of Appeals, 8th Circuit, in an opinion by HOOK, J., as follows: "A judgment to be conclusive as an estoppel between parties to a suit need not have been a formal judgment upon a hearing, nor does it matter that the question decided was purely one of law or that the decision was rendered on a demurrer, or a mere motion. If the merits were involved and decided, the decision is final." The court said: "The question involved was not a mere collateral one arising during the progress of a cause, but was of the ultimate and substantial rights of the parties. The order of the district court was not in an inconclusive summary proceeding. It went to the very foundation of their claims, and was in terms decisive of the merits after a full hearing. It was a final and appealable order, and was affirmed upon like hearing by the highest judicial tribunal of the State. There would, therefore, seem to exist all the elements of an estoppel by judgment. It is not material that the Wilder Charity did not expressly join in the motion to strike the complaint in intervention from the files. The heirs made it a party . . . to the appeal to the Supreme Court. A formal joinder of issue is not always essential. [United States Fidelity & Guaranty Co. v. Haggart (C. C. A.), 163 Fed. 801.] Nor does it matter that the question decided in the prior case was purely one of law (Mitchell v. Bank, 180 U. S. 471), nor that the decision was upon a motion or a demurrer (Commissioners v. McIntosh, 30 Kan. 234; Truesdale v. Trust Company, 67 Minn. 454; Oregonian Railway v. Navigation Co., 27 Fed. 277), provided the merits were involved and were decided, and the order or decision of the court was final."

The same rule is announced in the following cases: Pond v. Huling, 125 Mo. App. 474, l. c. 482; Oregonian Railway Co. v. Navigation Co., 27 Fed. 277, l. c. 283; Lyon v. Mfg. Co., 125 U. S. 698; Spencer v. Watkins, 169 Fed. 379; Turner v. Cotes, 90 Ga. 731; New Orleans City Bank v. Walden, 1 La. Ann. 46.

The foregoing cases, as well as many more throughout this country and England, in substance hold that where the demurrer strikes at the merits of a cause, the very life of it, and not to some collateral question arising during the progress of the trial, or to some matter in abatement, such as non-joinder or misjoinder of parties, multifariousness, improper joinder of actions, etc., the judgment thereon is final.

We do not wish to be understood as holding that, where the petition shows upon its face that the plaintiff has a good cause of action, but the merits thereof are so carelessly, imperfectly or defectively stated, as not to constitute a cause of action, the sustaining of a demurrer thereto would constitute *res adjudicata*. But in a case such as the one at bar, where the petition shows, as it did on the previous appeal, that the facts or merits thereof were all and well pleaded and still they constitute no cause of action, then the doctrine of *res adjudicata* does apply in full force and effect, and there is no sound reason why it should not so do.

In the very nature of such a case, the merits could not be involved because not stated. If this was not true, then as previously stated, there could be and would be no end to litigation.

We are, therefore, of the opinion that the matters stated in this petition are *res adjudicata*.

IV. It is also insisted by counsel for respondents that the demurrer was properly sustained because the cause of action stated in the petition was

barred by the five-year Statute of Limitations, the same being section 1889, Revised Statutes 1909.

The petition charges, the illegal cause of action accrued in October, 1904, while the record shows that this suit was instituted September 16, 1910, more than five years after the cause of action accrued.

The suit is a bill in equity brought by a stockholder of a corporation, for the benefit of the corporation, for an accounting, and the recovery of alleged profits made by the defendants growing out of an alleged fraud perpetrated by them upon the corporation.

The fifth subdivision of said statute, which governs this case, provides what cases shall be barred in five years, and includes actions for relief on the grounds of fraud, with this proviso: "fifth, an action for relief on the ground of fraud, the cause of action in such case to be deemed not to have accrued, until the discovery by the aggrieved party, at any time within ten years of the facts constituting the fraud."

The case of Bent v. Priest, 86 Mo. 475, which was like the one at bar, held that the five-year statute applied thereto. In discussing the question the court on page 487 said:

"This suit was begun February 19, 1879, five years and ten to fifteen days after Wyman received the bonds for himself and defendant. The agreement by which the bonds were acquired and the receipt of the same are facts which were kept secret from all persons save those directly connected therewith, until 1878, when rumors were afloat pointing to these facts. They were then brought to the attention of the court and soon thereafter this suit was begun. Defendant pleaded the five-year Statute of Limitations, and plaintiff replied that the fraud was not discovered until within five years next before the commencement of the suit. Section 3230, Revised Statutes, specifies five different classes of civil actions (other

then those for the recovery of real estate) which can
only be commenced within five years after the cause of
action shall have accrued. ﹅The fifth is: ''An action
for relief on the ground of fraud, the cause of action
in such case to be deemed not to have accrued until
the discovery by the aggrieved party, at any time
within ten years, of the facts constituting the fraud.'

''Our Statute of Limitations applies to equitable,
as well as legal causes of action, and we agree with
counsel for the defendant that this clause under con-
sideration should be considered in the light of the
former equity rules, the place of which, in many re-
spects, at least, it was designed to take. Beyond
doubt the statute does not now and never did run
against an express continuing trust in favor of the
trustee, certainly not until he openly repudiates the
trust. [Johnson v. Smith, 27 Mo. 591; Smith v. Ric-
ords, 52 Mo. 581; s. c., 56 Mo. 552.] Conceded it
must be that by the equity rules, the statute was not
applied by way of analogy, in cases of actual fraud,
until the discovery of the fraud. But is it true, as is
contended here, that by those rules the statute was
applied without regard to the time of discovery in
case of constructive frauds and trusts? It was said by
SCOTT, J., in Keeton's Heirs v. Keeton's Admr., 20
Mo. 541: 'In cases of resulting, implied and construc-
tive trusts, where a party is to be constituted a trustee
by a decree of a court of equity founded on fraud,
it is well settled as a rule of equity, that the Statute
of Limitations, and presumptions from lapse of time,
will operate. With regard to the Statute of Limita-
tions, it will run from the time that the facts are
brought home to the knowledge of the party.' [See,
also, Perry on Trusts, secs. 228 and 230; 1 Dan. Ch.
Plead. 669; Hunter v. Hunter, 50 Mo. 445; Angell on
Lim., sec. 470.] In the case last cited the defendants
were the uncles and agents of the plaintiffs for the
management and sale of the lands; they purchased

the lands with the value of which plaintiffs were not familiar, at an under value; they then sold the same at an advanced price. It was a suit to establish a constructive trust for the profits arising from the resale. It was there said: 'If a party is in possession of, or has notice of, the main facts constituting the fraud, the statute will commence running from that time.' The difference of opinion expressed in that case and the subsequent one of Rogers v. Brown, 61 Mo. 187, is not pertinent to any inquiry here, for this case in no way concerns real estate.''

The bill alleges that the tripartite agreement was made September 27, 1904, subject to the approval of the stockholders; that it was approved October 19, 1904, and that it was fully executed November 1, 1904, but it nowhere charges that he had no knowledge of those transactions, or that those from whom he purchased his stock were ignorant of those facts. In the absence of such an allegation in the bill, the law will presume that they knew of those facts from the date of their occurrence, and having such knowledge the cause of action accrued at that time, which was more than five years prior to the institution of the first suit, as previously shown.

So under the authority of Bent v. Priest, supra, we must hold that the cause of action was barred by the Statute of Limitations. That being true, this suit, which is based upon the same cause of action, is barred also, regardless of the one year Statute of Limitations, presently to be considered.

But independent of the ruling just announced, this cause of action is barred by the five-year statute, whether the plaintiff and those from whom he purchased his stock knew of said transaction or not, for the reason that the facts were open and known, appearing upon the records of the corporation, and the mortgages or deed of trust executed in pursuance to the tripartite contract were recorded in the recorder's

office in the city of St. Louis. No act of concealment of the facts is shown, but upon the contrary, the transactions themselves were of a public character, affecting the entire street railway system of the city which was the subject of general conversation and newspaper comment and notoriety.

The case of Shelby County v. Bragg, 135 Mo. 290, was a suit against the former clerk of the circuit court and ex officio recorder to recover fees collected by him in excess of his salary and converted to his own use, and which he had been enabled to retain because of fraudulent settlements made by him with the county court. In that case, this court, in discussing the effect of knowledge, or rather the want of knowledge of the fraud, by the county court, upon the five-year Statute of Limitations, said:

"The question is whether the statements made by defendant were such fraudulent concealments of the facts as delayed the operation of the statute until a discovery of the truth. The question is not whether the county, or its agent, the county court, was merely ignorant of the facts constituting the cause of action. Such ignorance will not suspend the operation of the statute unless it can be properly attributed to the fraudulent concealment of the facts by defendant. [Wells v. Halpin, 59 Mo. 97; Garret v. Conklin, 52 Mo. App. 659; Foley v. Jones, 52 Mo. 64.] It cannot be said that the evidence of the facts constituting plaintiff's cause of action was concealed or suppressed. The evidence all existed upon the official books and records of the office, open to the examination of the court. The expert accountants who afterwards made an examination encountered no difficulties in making an account of fees collected. They reported no destruction of books, or the suppression or concealment of no fact which would prevent an accurate statement being made. . . . Statutes of Limitations are favored in the law, and cannot be avoided unless the party

seeking to do so brings himself strictly within some exception. 'A party seeking to avoid the bar of the statute on account of fraud must aver and show that he used due diligence to detect it, and if he had the means of discovery in his power, he will be held to have known it.' [Wood v. Carpenter, 101 U. S. 141; Buckner v. Calcote, 28 Miss. 434; Nudd v. Hamblin, 8 Allen, 130.] A party cannot avail himself of this exception to the statute when the means of discovering the truth were within his power and were not used. [Cole v. McGlathry, 9 Me. 131.] In Wood v. Carpenter, supra, these among other conclusions were drawn, after a careful survey of the authorities: 'Concealment by mere silence is not enough. There must be some trick or contrivance intended to exclude suspicion and prevent inquiry. There must be reasonable diligence, and the means of knowledge are the same thing, in effect, as knowledge itself.' ''

In State ex rel. v. Yates, 231 Mo. 276, being an action on the bond of an absconding ex-treasurer of one of the State hospitals, the same doctrine is applied. The court, after quoting from the Bragg case and other cases, said: ''Unless the doctrine of the Bragg case is to be overturned it must control here. We know of no public policy or principle of law demanding the case to be overruled. It but proceeds upon trite precepts relating to negligence (and its converse, due diligence and care), viz.: That he who has at his disposal the means of knowing, is held to know; that he who shuts his eyes when to open them and look is to see, is held to see; and that where there is a duty to use diligence, those facts which diligence will discover are presumed to be known, under the law of notice. One must not go to sleep or rest on his oars where the issue is negligence. He must be up and doing, for the law favors the wakeful and diligent. [Adams v. Gosson, 228 Mo. 566.]'' The court also adopts with approval the following language from

State ex rel. v. Hawkins, 103 Mo. App. 254: ''Our conclusion is that it accrued when plaintiff discovered the fraud; or when, by proper diligence as an ordinarily prudent man, he, under the circumstances, should have discovered it.''

To the same effect is Landis v. Saxton, 105 Mo. 485; Hudson v. Cahoon, 193 Mo. 547.

If we correctly understand the contention of counsel for appellant, he does not question the correctness of the law just stated, but insists that it has no application to the facts of this case, because this is a suit in equity brought against parties sustaining a fiduciary relation to the Transit Company, to make them account for trust funds fraudulently converted to their own use.

This insistence, in our opinion, is unsound. Learned counsel for appellant misapplies to this case the law applicable only to technical, express trusts, created by deed or will. The cases of Shelby County v. Bragg, supra, in express terms holds that the five-year statute is applicable to suits brought against trustees and other persons standing in a fiduciary relation to the party alleged to have been defrauded.

The distinction between this class of cases which involve implied trusts and those involving express technical trusts, in so far as this statute is concerned, is clearly stated in the case of Landis v. Saxton, 105 Mo. 486; an action was brought by the last surviving director of a corporation against its former secretary, to recover moneys of the corporation, retained by him. The court said (p. 489):

''Was the action of the plaintiff barred by the statute? The trusts against which the statute will not run 'are those technical and continuing trusts, which are not at all cognizable at law, but fall within the proper, peculiar and exclusive jurisdiction' of a court of equity; but other trusts, which are the grounds of an action at law are open to the operation of the stat-

ute. [Kane v. Bloodgood, 7 Johns. Ch. 90.] The kind
of trusts which fall within the exclusive jurisdiction
of a court of equity are direct trusts, created by deed
or will, or by appointment of law, e. g., executorships
or administrators; but cases of constructive or im-
plied trusts which result from partnerships, agencies
and the like, are subject to the operation of the stat-
ute. [Farnam v. Brooks, 9 Pick. 212.] The crucial
test in all such cases is: Is there a remedy at law?
If there is, that is a conclusive answer to the claim
that a technical trust, as aforesaid, has been created.
[Murray v. Coster, 20 Johns. 583.] Referring to the
case in 7 and 20 Johns. Ch., supra, with approval,
STORY, J., says in Robinson v. Hook, 4 Mason, 152:
'But, as to cases of merely constructive trusts,
created by courts of equity, or cases which, in a sense,
are treated for some purposes as implied trusts, to
which, however, legal remedies are applicable, the doc-
trine cannot be admitted that the Statute of Limita-
tions does not embrace them. If it were otherwise,
there is scarcely a single case of bailment or of money
received to use, or of factorage concerns, or of gen-
eral account into whose service the doctrine might
not be pressed.' [Angell on Limitations (6 Ed.), pp.
174, 175 and cases cited.] As showing that directors
of a corporation are not trustees, within the technical
rule, and that they may invoke the statutory bar when
sued, see Williams v. Halliard, 38 N. J. Eq. 373; Sper-
ing's App., 71 Pa. St. 1. In Kane v. Bloodgood, supra,
under a statute substantially identical with the one
under discussion, it was also ruled that the directors
of an incorporated company were not technical
trustees within the equity rule, and when sued for divi-
dends on shares could invoke the statute. If the di-
rectors, who become trustees in name, upon the dis-
solution of the company, can successfully invoke the
statute, may this not be done by their ministerial

agents, their mere clerks?    [1 Morawetz on Pri. Corp., sec. 516.]''

The court then discussed cases in regard to bank deposits, and shows that they are governed by a different rule.

The courts proceeds (p. 492):

''In Palmer v. Palmer, 36 Mich, 488, Campbell, J., said: 'If a creditor has the means at all times of making his cause of action perfect•it would be unjust and oppressive to hold that he could postpone indefinitely the time for enforcing his claim by failing to present it. He is really and in fact able at any time to bring an action, when he can, by his own act, fix the time of a payment. It is no stretch of language to hold that the cause of action accrues for the purpose of setting the statute in motion as soon as the creditor by his own act, and in spite of the debtor, can make the demand payable.' ''

In Landis v. Saxton, supra, which, as before stated, was an action against the former secretary of a company, the court held that the five-year Statute of Limitations, and not the ten-year statute, applied.

In the case of Hudson v. Cahoon, 193 Mo. 547, the defendant was authorized by plaintiff to sell lands belonging to the plaintiff, and secured from plaintiff a deed with the name of the grantee blank, the consideration stated therein being $180, and defendant afterwards filled in his own name, sold part of the land for $764.55, and reserved to himself the mineral under the land so sold. Plaintiff brought suit to recover the excess realized by the defendant agent, over and above the amount accounted for, and also to divest out of him the title which he had reserved to himself in the resale, and to vest the same in plaintiff. The question for decision was, whether any Statute of Limitations was applicable to the case, in view of the fact that the relation between the parties was that of trustee and *cestui que trust,* and if any statute ap-

plied, the next question was which statute was appli-
cable to that part of plaintiff's cause of action wherein
he sought to recover the profits made by the agent.
In discussing these questions the court said (p. 560):

"As to the claim for the profits realized by the
defendant, a totally different question presents it-
self. Conceding that the plaintiff was entitled to those
profits, the question is whether or not his claim thereto
was barred by limitation when this action was
brought. . . , The deed from the plaintiff to the
defendant and the deed from the defendant to Parks
were recorded in 1892. They recited the considera-
tion moving to the grantors. They disclosed on their
face the profit alleged to have been received by the
defendant from the resale of the lands. The plaintiff
was, therefore, charged with notice of the facts, as of
those dates. [Bent v. Priest, 86 Mo. 489.] And the
plaintiff would have been entitled to recover the same
if he had brought his action at any time within five
years from that date. He failed so to do, and, there-
fore, his action to recover such profits was barred at
the time this suit was brought. To avoid this conclu-
sion, the plaintiff claims that the statute does not run
against a trust, and that the defendant held the profits
as a trustee for the benefit of the plaintiff. The statute
does not run against express trusts; but an express
trust is a trust created by deed or law, and such is not
the character of the trust relied on in this case. It
was an implied or constructive trust, and the Statute
of Limitations runs against implied or constructive
trusts. [Landis v. Saxton, 105 Mo. l. c. 489; Reed v.
Painter, 145 Mo. l. c. 356.] It follows that the petition
shows on its face that the plaintiff was barred on the
right of recovery as to the profits, but that he was not
barred of his right of recovery as to the interest in
the land, unless by reason of laches now to be con-
sidered."

The case of Elliot v. Landis Machine Co., 236 Mo. 546, does not announce a different rule. In that case the plaintiff sued in equity to follow and recover specific trust property, and the question of an accounting for profits was only incidental to the main relief sought. A suit to follow trust funds must be an equitable proceeding, and not an action at law, and consequently section 1899, Revised Statutes 1909, as previously shown, does not apply. It is not a suit in the language of the statute, "for relief on the ground of fraud;" nor is it an action to recover a money judgment, except as that is incidental to the main purpose and scope of the bill.

Neither the case of Landis v. Saxton, supra, nor Hudson v. Cahoon, supra, were mentioned in the Elliot-Landis Machine Co. case. The latter case differs materially from the two former in this:

As previously stated the Elliot case was a bill in equity to follow and recover specific trust property, for which no special statute is provided, and consequently falls with section 1888, Revised Statutes 1909, while this case is a suit to recover profits only, money judgment and the claim for relief growing out of the alleged fraud of the defendants, as previously stated, which clearly brings it with the fifth subdivision of the five-year Statute of Limitations.

The case of Newton v. Rebuack, 90 Mo. App. 659, like the Elliot-Landis Machine Co. case, was to follow and recover specific trust property, and it was there properly held that the ten-year statute governed.

V. It is finally insisted by counsel for appellant, that this action may be maintained because of the saving clause contained in section 1900, Revised Statutes 1909, which provides that the plaintiff may have one year additional time after a nonsuit has been suffered in which to bring the suit over.

This insistence is untenable for the reason, that the appellant did not suffer a nonsuit as a matter of fact, in the former case. The judgment there was a final judgment upon a demurrer to the merits of the cause, as previously held, and not a nonsuit, as insisted by counsel.

We are, therefore, of the opinion that the judgment of the circuit court should be affirmed; and it is so ordered. All concur.